1. THE UPSON COUNTY RAIL ROAD COMPANY, *et al.* plaintiffs in error, *vs.* THOMAS S. SHARMAN, *et al.*, defendants in error.

2. The same parties *vice versa*.

When by their charter, the Upson County Railroad Company, had the power and authority, to lease, rent, or sell said railroad, its appurtenances, and *franchises to any other incoporated railroad company of this State,* and the President of said Company issued a public notice, inviting proposals for the sale of the road, in pursuance of the following resolution adopted at a meeting of the Stockholders, to wit: "Resolved, that the President and Directors, are hereby authorized and instructed, to take such measures as will enable the company to wind up the affairs of said road, to the best interest of the Stockholders," which public notice inviting proposals for the sale of the road, is in substance, as follows: "I therefore offer to receive proposals until the first day of September, next, for the purchase of the entire road of the company with its franchises, rights, and privileges, etc. I will also receive distinct proposals until the above named day, for the *purchase of the iron alone, or any part thereof,* to be delivered at Barnesville. I will also in like manner, receive distinct proposals for the road-bed, and all the real estate of the Company, together with the franchise, and privileges of the company:"

*Held,* upon a bill being filed at the instance of a portion of the stockholders in said company, to restrain the sale of said road in the manner proposed by the President of the Company, as being in violation of their charter, that the demurrer to said bill, was properly overruled by the Court below:

*Held,* also, that upon a motion to dissolve the injunction upon the coming in of the defendants' answer, admitting the fact of issuing the proposals for the sale of the road as stated in the record, which constitutes the main ground of the complainants' equity, that the injunction ought not to have been dissolved, and that the Court below committed error in dissolving the injunction.

Equity. Demurrer. Motion to dissolve injunction. Decided by Judge SPEER. Upson Superior Court: November Term, 1867.

The Thomaston & Barnesville Railroad Company, was incorporated on the 23rd day of December, 1839, and authorized to build a railroad from Barnesville, Pike county to Thomaston, in Upson county. They built the road, tapping the Macon & Western Railroad at Barnesville. The corporation was sued, and its road-beds, right-of-way, depot-grounds and buildings, were levied upon by *fi. fas.*, and sold by the sheriff at Thomaston, on the 1st Tuesday in May, and bid off by Thomas S. Sharman, Andrew J. White, and others, and the sheriff by deed, conveyed the same to them.

Sharman and his associates, organized under the name of the Upson County Railroad Company, and under a charter passed in December, 1860, under that name, took the place of the original corporation. The new corporation continued to run and operate the road till April, 1865, when their depot-buildings, etc., were destroyed by Federal soldiers. Then *ex necessitate*, it ceased running the road. An effort to raise money from its stockholders to re-equip the road, proved abortive.

On the 2nd of July, 1867, at a regular meeting of stockholders, they passed the following resolution:

"That, Whereas, the Upson County Railroad Company, has proved a failure thus far, and the fact is demonstrated that the road can not command business sufficient to operate the road, therefore *Resolved:* That the President and Directors, are hereby authorized and instructed, to take such measures as will enable the Company to wind up the affairs of said road, to the best interest of the stockholders."

Pursuant to this resolution, the President of the Company published the proposal set out in the opinion.

Upon the appearance of this proposal, Sharman, White and others, who owned stock in said corporation, but far less stock than that owned by Mustain and his associates, filed their bill in equity, setting forth the foregoing (and other matters not material here) and that Mustian and his confederates had bought out the stock of other parties, with the understanding, that they would equip the road and operate the same, but were now combining and confederating to sell the same by piece-meal and thus destroy it as a road, to the injury of the public and of complainants, and that, by reason

of their holding so much stock, the complainants could not by a vote of the stockholders prevent it.

They further charged that while by their charter they got the powers, privileges, rights and immunities of the old corporation, the Legislature also gave the new corporation power and authority "to lease, rent or sell its said railroad, its appurtences and franchises, to any other incorporated Railroad Company of this State, and the incorporated Company leasing, renting or buying the same, shall succeed to all the rights, privileges and immunities, to which the said Upson County Railroad are entitled under this Act, and no more," and contended that, having accepted this charter, they could not legally sell the railroad otherwise than as a railroad in its entirety, and to another incorporated Railroad Company in this State. They prayed that the corporation, Mustian and his confederates should be enjoined from selling said railroad, except to such purchaser as will equip and run the same, and to enjoin them absolutely from selling the iron, etc., apart from the road.

The bill was sanctioned and injunction as prayed for, was issued and served. The corporation and other defendants demurred to the bill on the grounds: "That the complainants misjoin their claim for relief with the claims of the public, which respective claims in this ground mentioned, are separate and distinct in interest and in their nature from each other; that said bill shows that complainants seek thereby, a decree to enforce the obligation which the Upson County Railroad Company is therein stated to owe to the public, and the public in whose behalf said decree is sought, is not a party to said bill; and lastly, that there is no equity in said bill, the complainants not therein and thereby, making a case entitling them in law to the relief prayed for.

Upon argument had, the Court overruled the demurrer, and the corporation, etc., excepted and assigned that ruling as error. That made said case, No. 1. Said bill with what follows, made said case No. 2.

The defendants answered the bill, not denying any of said allegations, except that the damage done by the Federal offi-

cers, was the cause of said road stopping.    They said it was stopped because it was impossible to run it profitably, and gave a history of their abortive efforts to make it profitable, and they denied that they bought stock with any understanding that they would run the road.    They admitted the passage of the resolution, but averred that their motives were fair, and that they intended to close up the business of the corporation and surrender the franchise to the State, and that said offer to receive proposals for purchase was not intended to bind the company to make any sale, but only to ascertain what could be procured on various propositions from purchasers of the property as a whole and in distinct parts, so that the company would be enabled to decide intelligently, when it came to pass finally upon the subject of winding up the affairs of the Company.    In short, they contended that the public granted this franchise for the benefit of the corporators and their successors alone, and that a majority of such stockholders might at any time, and in any way, sell said property, except the franchise, and that the quoted portion of the charter was only intended to give certain rights to any incorporated railroad company which should purchase this property, and was not a limitation on the owners in their disposition of all the property except the franchise.    The fraud charged was denied, and combination, etc., was charged back on complainants.    The balance of the answer being to parts of the bill not reported, are not material.

Upon the coming in of this answer, a motion was made to dissolve the injunction.    At the hearing, complainant's solicitors introduced and read the report of A. J. White, the former President of the Upson County Railroad Company, made to the stockholders, on the 1st July, 1861.    It contained nothing relevant to the law points herein decided.    The Chancellor dissolved the injunction, and this is assigned, by Sharman and his associates as error.

PEEPLES & CABANISS, for complainants.

B. HILL, SMITH & ALEXANDER, for defendants.

WARNER, C. J.

Whatever may be the rights and equities of the respective parties to this bill, upon the final hearing of the cause, it would be premature for this Court now to decide. There are two errors assigned to the judgment of the Court below : First, in overruling the demurrer to the complainants' bill. Second, in dissolving the injunction upon the filing of the answers of the defendants. Was the demurrer to the complainants' bill properly overruled? The complainants are stockholders in the Upson County Railroad Company, and therefore, have an interest in it. By the 4th section of the Act of 1860, it is declared, "That the said Upson Railroad Company shall have power, and they are hereby authorized to lease, rent, or sell its said railroad, its appurtenances and franchises, to any other incorporated railroad company of this State, and the incorporated company leasing, renting, or buying the same, shall succeed to all the rights, privileges and immunities to which the said Upson County Railroad Company are entitled under this act, and no more." See Acts, 1860, page 200. It will be perceived that by this section of the charter the Company are *limited* in leasing, renting, or selling the road, its appurtenances and franchises, to some other "*incorporated Railroad Company in this State.*" The main ground of equity alleged and set forth in the complainants' bill is, that the Company, through its President, have invited proposals for the purchase of the entire road of the Company, with its franchises, rights and privileges, and also distinct proposals for the purchase of the iron alone, or any part of it, to be delivered at Barnesville. The proposals made by the President of the Road for the purchase thereof, is attached to the complainants' bill as an exhibit, and is as follows :

"The Upson Railroad Company: The stockholders of said Company, at a meeting held on the 2d day of July, 1867, having authorized and required the President and Directors of the Company to take such measures as they might deem best to wind up the affairs of the Company for the benefit of the stockholders, and the Directors of the Company having,

The Upson County Rail Road Company *vs.* Sharman *et al.*

in obedience to said resolution, required the undersigned President of said Company to open a correspondence with *such persons as he may deem advisable for the sale of the Road of the Company*, with all its effects, both real and personal, I therefore offer to receive proposals until the first day of September next, for the purchase of the entire Road of the Company, with its franchises, rights and privileges, and one loco-motive, a lot of old wheels, and scrap. iron.  The Road extends from Thomaston to Barnesville, on the Macon and Western Railroad, a dis-tance of sixteen and six-tenths miles, and is laid for about six miles with ron of the T and U patterns, and the remainder of the distance with an ᵢexcellent flange bar, as good as new.  I will also receive distinct pro-posals until the above named day, for the purchase of the iron alone, or any part thereof, to be delivered at Barnesville.  I will also, in like manner, receive distinct proposals for the road-bed, and all the real estate of the Company, together with the franchises and privileges of the Company.  Bidders will address me at Columbus, Georgia, or Dr. E. A. Flewellen, Secretary of the Company, at Thomaston, Georgia.

J. L. MUSTIAN,<br>
President Upson County Railroad Company."

This proposed sale of the road, as well as the proposal to sell the iron separately, is alleged by the complainants, in their bill, to be in violation of the charter, and a *fraud* upon their rights as stockholders in said Company.  The resolu-tion under which the proposal for the sale of the road and iron is made, does not require the President of the Company to open a correspondence with " any other *incorporated Rail-road Company* of this State," as the charter requires, but " with such persons as *he may deem advisable* for the sale of the road."  This proposition to sell the road in the manner stated, either in detached portions thereof, or the iron sepa-rately, was, in our judgment, a violation of the charter, and when coupled with the other allegations in the bill, (which the demurrer admits to be true,) furnished a sufficient ground for the equitable jurisdiction of the Court to restrain, by injunction, the proposed sale of the road, as well as the sale of the iron attached thereto.  There was no error in the judgment of the Court below, in overruling the demurrer to the complainants' bill.

As it regards the motion to dissolve the injunction upon the filing the defendants' answers, it will be remarked that the main ground of the complainants' equity is the proposal

to sell the road in the manner stated, in violation of the 4th section of the charter of the company. The proposition to sell the road as charged, is admitted by the defendant; that is to say, the proposals, as ·charged, for the sale of the road and iron, were made by the President of the Company; but thè answers seek to explain and avoid the effect thereof, by· stating what was the *intention* of defendants in advertising said proposals for the sale of the road and iron. The continuance or dissolution of an injunction, after the coming in of the answer, depends upon the sound discretion of the Court, according to the nature and circumstances of the case. If the answer is not full and satisfactory as to *any one of the grounds of equity* set up in the bill, or is deficient in frankness, candor or precision, or is illusory, the injunction will be continued until the hearing. Swift vs. Swift, 13 Geo. R., 141. Horn vs. Thomas, 19 Geo. R., 270. Thomas vs. Horn, 24 Geo. R., 481. One of the main grounds upon which the equity of the complainants' bill is based for an injunction, not being denied by the defendants' answers, the Court below erred, in our judgment, in dissolving the injunction. Let the judgment of the Court below be reversed upon this last ground of error assigned in the record.